# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

LOUISIANA SPORTS & FITNESS CENTER     CIVIL ACTION
NO. 2, INC., ET AL.

VERSUS             23-1701-SDD-EWD

ALLIED WORLD INSURANCE COMPANY,
ET AL.

## <u>RULING</u>

   This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendants Allied World Insurance Company and Vantapro Specialty Insurance Company (collectively, "Allied"). Plaintiffs Louisiana Sports & Fitness Center No. 2, Inc. d/b/a Spectrum Fitness, and D&D Partners, LLC d/b/a D&D Partnership (collectively, "Plaintiffs") filed an *Opposition*,[2] to which Allied filed a *Reply*.[3] For the reasons that follow, the *Motion* will be denied.

## I.  BACKGROUND

   On August 29, 2023, Plaintiffs filed a Petition (the "Original Petition")[4] in Louisiana state court involving an insurance dispute. Plaintiffs allege that their property located at 3103 Monterrey Drive in Baton Rouge was damaged by Hurricane Ida on August 29, 2021.[5] At the time of the loss, Plaintiffs allege the property was covered by an insurance policy issued by Allied ("the Policy").[6] According to the Original Petition, Plaintiffs "performed all conditions, covenants, and promises required to be performed in

---

[1] Rec. Doc. 23.
[2] Rec. Doc. 26.
[3] Rec. Doc. 28.
[4] Rec. Doc. 1-2.
[5] *Id.* at ¶¶ 1, 11.
[6] *Id.* at ¶ 5.

accordance with the terms and conditions of the Policy."[7] The Original Petition indicates that Plaintiffs provided Allied with pertinent information and submitted an insurance claim following the loss.[8] However, dates of these events were not pled.[9] Plaintiffs further allege that Allied has "offered no further information on this claim or requested any additional information from the Insured in order to complete the loss adjustment" for coverage under the Policy.[10] The Original Petition also alleges that Allied inspected the property at least once, that the inspection was "inadequate," and that Allied failed to make any payments following the inspection.[11] Plaintiffs assert that Allied breached the insurance contract by failing to issue payments for the property damage.[12] The Original Petition also sets forth causes of action for negligence, breach of fiduciary duties, and bad faith damages pursuant to Louisiana Revised Statutes 22:1973 and 22:1892.[13]

Allied removed the action to this Court on December 29, 2023.[14] On March 5, 2024, Plaintiffs filed an Amended Complaint.[15] In the Amended Complaint, Plaintiffs allege inspections by Allied made after the Original Petition was filed.[16] Plaintiffs allege that Allied has made no payments following two inspections:

> Despite being fully apprised of the true amount of loss covered under the policy, Defendants have refused to provide proper coverage and payment for the loss. Specifically, Defendants have inspected the Property on September 20, 2023, and then again on December 12, 2023, and yet have failed to

---

[7] *Id.* at ¶ 18.

[8] *Id.* at ¶¶ 21, 24, 29, 34, 42, 43.

[9] The Original Petition purports to set forth a "chronology of the claim activities" (*id.* at ¶ 14), but the only event listed in the chronology is the occurrence of damage from Hurricane Ida on August 29, 2021.

[10] *Id.* at ¶ 15.

[11] *Id.* at ¶¶ 20, 21.

[12] *Id.* at ¶¶ 16–26.

[13] *Id.* at ¶¶ 27–57.

[14] Rec. Doc. 1 (removed under 28 U.S.C. § 1332).

[15] Rec. Doc. 22.

[16] *Id.* at ¶ 9.

make any payment, nor have they provided Plaintiffs with an explanation of their inspections.[17]

The Amended Complaint asserts causes of action for breach of contract and bad faith claim handling.[18]

Allied filed the instant Motion to Dismiss on March 19, 2024. Allied asserts that Plaintiffs' action was not ripe at the time the Original Petition was filed because Plaintiffs had not provided Allied with any notice of their claim, warranting dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).[19] Allied also argues that Plaintiffs have failed to state plausible claims for relief because Allied's coverage duties were not triggered, warranting dismissal under Rule 12(b)(6).[20]

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss under Rule 12(b)(1)

#### 1.  Legal Standard

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'"[21] "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)."[22] Pursuant to Rule 12(b)(6), a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." However, when ruling on a Rule 12(b)(1) motion,

---

[17] *Id.* at ¶ 10.
[18] *Id.* at ¶¶ 11–17.
[19] Rec. Doc. 23-1, pp. 1–3.
[20] *Id.*
[21] *Crenshaw-Logal v. City of Abilene, Texas*, 436 F. App'x. 306, 308 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); Fed. R. Civ. P. 12(h)(3)).
[22] *Wagster v. Gautreaux*, 2014 WL 3546997, at *1 (M.D. La. July 16, 2014) (quoting *Hall v. Louisiana, et al*, 974 F.Supp.2d 978, 985 (M.D. La. Sept. 30, 2013)) (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992)).

"the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[23] "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle plaintiff to relief."[24]

In reviewing a motion under Rule 12(b)(1) for lack of subject matter jurisdiction, a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[25] A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, *i.e.*, the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, *i.e.*, the facts in the complaint supporting subject matter jurisdiction are questioned.[26] A motion is analyzed as a facial attack when a defendant files a Rule 12(b)(1) motion without accompanying evidence.[27] In a facial attack, allegations in the complaint are taken as true.[28] A facial attack analysis mirrors the analysis used for a Rule 12(b)(6) motion.[29]

If the defendant brings a factual attack, a court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the

---

[23] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir.2008).

[24] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

[25] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

[26] *In re Blue Water Endeavors, LLC*, No. 08–10466, Adv. No. 10–1015, 2011 WL 52525, *3 (Bankr. E.D.Tex. Jan. 6, 2011) (citing *Rodriguez v. Texas Comm'n of Arts*, 992 F.Supp. 876, 878–79 (N.D.Tex.1998), *aff'd*, 199 F.3d 199 (5th Cir. 2000)).

[27] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[28] *Blue Water*, 2011 WL 52525 at *3 (citing *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir.1995)); *PlainsCapital Bank v. Rogers*, 715 F. App'x. 325 n. 1 (5th Cir. 2017).

[29] *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 351 (5th Cir. 1989). *See also, e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990); *Willekes v. Serengeti Trading Company*, 783 F. App'x. 179, 183 (3rd Cir. 2019) (citing *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3rd Cir. 2014)).

issue of jurisdiction.[30] The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c)[31] because, "[u]nlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[32] In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit, has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"[33]

Allied's jurisdictional argument is properly characterized as a factual attack because it questions the accuracy of certain facts the Plaintiffs alleged. Specifically, Allied asserts:

> Although Plaintiffs' original petition expressly alleges that they "performed all conditions, covenants, and promises" required by the policy (Doc. 1-2 [the Original Petition], ⁋ 18), that Allied "was given the full value of the cost of repairs as early as the date that defendant made its first inspection" (*id*., ⁋ 21), that Allied "breached the duties owed to Plaintiffs by failing to make just, adequate, and timely payment on claims or to investigate any claims even after hav[ing] been on the property and even after the claims were submitted under the Policy" (*id*., ⁋ 29), that "Defendants have received satisfactory proofs of loss for the claimed losses and damages for which Defendants failed to pay any amount within thirty (30) days" (*id*., ⁋ 42), and that "Defendants' failures as herein alleged were and are unreasonable, arbitrary, and capricious" (*id*., ⁋

---

[30] *See Irwin v. Veterans Admin*., 874 F.2d 1092, 1096 (5th Cir. 1989).

[31] *Robinson v. Paulson*, No. H–06–4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008) (citing *Garcia v. Copenhaver, Bell & Assocs*., 104 F.3d 1256, 1261 (11th Cir. 1997)).

[32] *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).

[33] *Robinson*, 2008 WL 4692392, at *10 (quoting *Garcia*, 104 F.3d at 1261, and citing *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986)).

44), it is now undisputed that none of those allegations was true at the time they were asserted.[34]

### 2. Standing and Ripeness

"Article III standing is a jurisdictional prerequisite."[35] If a plaintiff lacks standing to bring a claim, the Court lacks subject matter jurisdiction over the claim, and dismissal under Rule 12(b)(1) is appropriate.[36] "A plaintiff bears the burden of establishing standing and ripeness under Article III."[37] Article III of the Constitution limits federal courts' jurisdiction to certain "cases" and "controversies." "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[38]

Related to standing is ripeness, which is "a question of timing."[39] To be justiciable, a case must be "ripe," meaning "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[40] Ripeness ensures that federal courts do not decide disputes that are "premature or speculative."[41] A case becomes ripe when it "would not benefit from any further factual development and when the court would

---

[34] Rec. Doc. 28, pp. 1–2.

[35] *Crenshaw-Logal*, 436 F. App'x. at 308 (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, and *Xerox Corp.*, 888 F.2d at 350).

[36] *See Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).

[37] *Taylor v. Denka Performance Elastomer LLC*, 332 F. Supp. 3d 1039, 1049 (E.D. La. 2018). *See also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006): "Because defendants removed the case from state court to District Court, plaintiffs were not initially the parties that invoked federal jurisdiction. … Nonetheless, because '[w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record,' *Renne v. Geary*, 501 U.S. 312, 316 (1991) …, the party asserting federal jurisdiction when it is challenged has the burden of establishing it. Whatever the parties' previous positions on the propriety of a federal forum, plaintiffs, as the parties seeking to establish federal jurisdiction, must make the showings required for standing."

[38] *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).

[39] *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974).

[40] *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

[41] *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)).

be in no better position to adjudicate the issues in the future than it is now."[42] The ripeness inquiry reflects "'Article III limitations on judicial power' as well as 'prudential reasons for refusing to exercise jurisdiction.'"[43] Ripeness is part of subject matter jurisdiction, which must be established by the party invoking federal jurisdiction.[44]

Allied argues this action "should be dismissed for lack of subject matter jurisdiction because [Plaintiffs'] claims for breach of contract and bad faith claim handling were not ripe for adjudication at the time of filing."[45] More specifically, Allied asserts that, despite the contrary allegations in the Original Petition, Plaintiffs had not filed a claim with Allied nor provided any notice of loss as of the time the Original Petition was filed.[46] Instead, Allied states that Plaintiffs did not advise Allied of its claim for damages until August 30, 2023–the day *after* the filing of the Original Petition.[47]

Plaintiffs do not dispute that they did not notify Allied of their claim prior to filing the Original Petition.[48] However, Plaintiffs assert that during the time between the filing of the Original Petition and the Amended Complaint, Allied knew about the claim, conducted two inspections, and has continued in its failure to pay.[49] Accordingly, Plaintiffs contend the action is ripe.

---

[42] *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010).
[43] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).
[44] *Abdelhak v. City of San Antonio*, No. SA-09-CA-804-FB, 2011 WL 13124298 at *10 (W.D. Tex. Dec. 6, 2011). *See also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).
[45] Rec. Doc. 23-1, p. 11.
[46] *Id.*
[47] *Id.*
[48] *See* Rec. Doc. 26, p. 1 ("On August 29, 2023, Plaintiffs filed their Original Petition and Demand for Jury Trial in the 19th Judicial District for the Parish of East Baton Rouge Parish, *at which point Defendants became aware of the claim*.") (emphasis added).
[49] *Id.* at p. 3.

In support of its argument that the action is not ripe, Allied relies on *Burkhalter v. Hartford Underwriters Insurance Company*,[50] a case decided in another section of this Court. In *Burkhalter*, the insureds filed suit before obtaining written denials of their claims. This was in violation of the Standard Flood Insurance Policy ("SFIP") at issue, which expressly stated that any suit for coverage "must start … *after* the date of the written denial of all or part of the claim."[51] The court found that the claims were not ripe, reasoning as follows:

> By prematurely filing suit, Plaintiffs deprived the Defendant insurers of an opportunity to adjust their claim within 60 to 90 days, as required under the SFIP. … Simply put, at the time of filing, Plaintiffs' claims were speculative—and therefore *not* ripe—because the possibility remained that the Defendant insurers would adjust Plaintiffs' claims favorably. In other words, when Plaintiffs sued, they were merely guessing that their insurers would deny coverage. More than guesswork is required to establish a ripe, justiciable case under Article III of the U.S. Constitution.[52]

Allied argues that the foregoing reasoning from *Burkhalter* compels dismissal of the instant action because "[f]iling a lawsuit that contains breach of contract and bad faith claims *before* filing an insurance claim with the insurance carrier is exactly the type of guesswork that is insufficient to establish a constitutionally justiciable claim."[53]

Allied's ripeness argument is focused on the Original Petition; it gives almost no attention to the Amended Complaint. Allied acknowledges that Plaintiffs did report their claim on August 30, 2023,[54] which was after the filing of the Original Petition but before

---

[50] *Burkhalter v. Hartford Underwriters Ins. Co.*, No. 17-CV-01086-BAJ-SDJ, 2021 WL 3121209 (M.D. La. July 22, 2021).
[51] *Id.* at *3 (quoting the SFIP).
[52] *Id.* (citing *Shields*, 289 F.3d at 837).
[53] Rec. Doc. 23-1, p. 12.
[54] *Id.*

the filing of the Amended Complaint. Although the Original Petition itself was likely not ripe at the time it was filed, the Amended Complaint is the operative pleading at this stage; as courts have repeatedly expressed, "[a]n amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."[55] The filing of the Amended Complaint, which occurred after the Plaintiffs filed their insurance claim, makes the facts of this case distinguishable from those in *Burkhalter*. When Plaintiffs filed the Amended Complaint, they were no longer "merely guessing that their insurers would deny coverage."[56]

The Amended Complaint contains the components that Allied complains were lacking from the Original Petition. In *Northstar Financial Advisors Inc. v. Schwab Investments*,[57] the Ninth Circuit provided a detailed discussion of the effect of the amendment or supplementation of a complaint on subject matter jurisdiction. In *Northstar*, the plaintiff filed a class action on behalf of investors in a fund. At the time of the filing of the original complaint, the plaintiff "owned no shares of the Fund, but it brought the action in its own name, without obtaining an assignment of claims from an investor in the Fund."[58] Later, the plaintiff obtained an assignment of claim from a shareholder and amended its complaint accordingly.[59] The defendants argued that, "because standing must be determined at the time a complaint is filed, and because [the plaintiff] did not obtain an assignment of claim until several months after the original complaint was filed,

---

[55] *La. Fiber Corp. v. Fireman's Fund Ins. Co.*, 105 F.3d 655 (5th Cir. 1996).
[56] *Burkhalter*, 2021 WL 3121209, at *3.
[57] *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1048 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015).
[58] *Id.* at 1043.
[59] *Id.*

the assignment could not cure [the plaintiff's] original lack of standing."[60] The Ninth Circuit disagreed and upheld the district court's finding that the supplemental complaint cured the standing deficiency of the original complaint.[61] The court found that its holding was consistent with *Rockwell Int'l Corp. v. United States*, where the Supreme Court pronounced, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."[62] In reaching its holding, the court quoted a similar case from the Federal Circuit, where the supplemental complaint was found to be the operative complaint under Federal Rule of Civil Procedure 15(d):

> Thus, while "[l]ater events may not create jurisdiction where none existed at the time of filing," the proper focus in determining jurisdiction are "the facts existing at the time the complaint *under consideration* was filed." … As the district court accepted [the plaintiff's] Amended Complaint, it is the Amended Complaint that is currently under consideration, and it is the facts alleged in this complaint that form the basis for our review.[63]

The *Northstar* court cited several other cases that supported its conclusion.[64]

Here, the Court granted Plaintiffs' Motion for Leave to Amend and Restate Complaint, where Plaintiffs sought "to amend their Complaint to clarify the names [of] the

---

[60] *Id.*

[61] *Id.* at 1044.

[62] 549 U.S. 457, 473–74 (2007).

[63] *Northstar*, 779 F. 3d at 1044–45 (quoting *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed.Cir.2008) (quoting, in turn, *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed.Cir.1996)) (other internal citations omitted)).

[64] *See, e.g., Travelers Ins. Co. v. 633 Third Assoc.*, 973 F.2d 82, 87–88 (2d Cir. 1992); *Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 347 (4th Cir. 2014); *Black v. Sec'y of Health and Human Servs.*, 93 F.3d 781, 790 (Fed. Cir. 1996) ("Nonetheless, a defect in the plaintiff's case, even a jurisdiction defect, can be cured by a supplemental pleading under Rule 15(d) in appropriate circumstances."); *United Partition Sys., Inc. v. United States,* 59 Fed.Cl. 627, 644 (Fed. Cl. 2004) ("The Supreme Court has interpreted Fed.R.Civ.P. 15(d) to permit supplemental pleadings in which a plaintiff may correct a jurisdictional defect in its complaint by informing the court of post-complaint events.").

parties involved in this litigation, as well as the relevant causes of action."[65] When it was filed, the Amended Complaint became operative as the pleading "currently under consideration."[66]

Allied argues that "[t]he question here is whether falsely alleging the elements of a cause of action suffices to state a justiciable claim before any breach has occurred or possibly could have occurred."[67] The Court acknowledges that the Original Petition was ostensibly filed before Plaintiffs provided Allied with notice of loss, and the Original Petition contained inaccurate allegations regarding the background facts. Even in furtherance of saving a potentially valid insurance claim from prescription, advancing inaccurate allegations is certainly not condoned.[68] But Allied failed to raise the ripeness issue until almost seven months after the Original Petition was filed and nearly four months after Allied removed the case to this Court, by which point Plaintiffs had filed the Amended Complaint, Allied knew about the claim, and Allied conducted two inspections of the property. Allied has not articulated how the Amended Complaint is unripe in light of those post-Original Petition developments.[69] Therefore, the Court finds that the operative complaint is ripe for adjudication. Allied's 12(b)(1) Motion on this basis is denied.

---

[65] Rec. Doc. 20.

[66] *Prasco*, 537 F.3d at 1337.

[67] Rec. Doc. 28, p. 2.

[68] *See* Fed. R. Civ. P. 11.

[69] The Southern District of Texas reached a similar conclusion in *Trussway, Ltd. v. AJM Framers, Inc.*, No. CV H-06-00219, 2006 WL 8451623, at *3 (S.D. Tex. July 5, 2006), *report and recommendation adopted*, No. CV H-06-0219, 2006 WL 8451624 (S.D. Tex. July 24, 2006). where the defendants' argument that the court lacked subject matter jurisdiction "because Plaintiff's recovery is too speculative and relies on the future failure of the trusses and the possibility of liability" was "rendered moot by the amended complaint," which cured the aspects of the original complaint about which the defendants complained. *See also Pousson v. S. Fid. Ins. Co.*, No. 6:22-CV-04717, 2024 WL 251157, at *2 (W.D. La. Jan. 23, 2024) (rejecting the insurer's argument that the plaintiff's suit was not ripe on the basis of the plaintiff's failure to notify the insurer of his claim prior to filing suit); *G&E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 168 F. Supp. 3d 147, 160 (D.D.C. 2016) ("it is proper to measure Plaintiff's standing as of the filing of the Amended Complaint").

**B.  Motion to Dismiss under Rule 12(b)(6)**

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[70] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[71] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[72]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[73] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[74] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[75] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[76] "Furthermore, while the court must accept well-

---

[70] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[71] *Sebelius*, 635 F.3d at 763 (internal citations omitted).
[72] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).
[73] *Twombly*, 550 U.S. at 545 (internal citations and brackets omitted).
[74] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[75] *Id*.
[76] *Id*.

pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[77] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[78]

### 1. Interpretation of Insurance Contracts

Because subject matter jurisdiction in this case is based on diversity of citizenship, the Court applies the substantive law of the forum state.[79] In Louisiana, "[i]n an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage. The insurer, however, bears the burden of showing policy limits or exclusions."[80]

An insurance policy is a contract between the parties and is construed using ordinary contract principles.[81] "The words of a contract must be given their generally prevailing meaning."[82] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[83] Further, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[84] Notably, any ambiguities in the policy must be construed against the drafter and in favor of the insured.[85]

---

[77] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. Jan. 10, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[78] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[79] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)
[80] *Tunstall v. Stierwald*, 2001-1765 (La. 2/26/02), 809 So.2d 916, 921 (internal citations omitted).
[81] *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016).
[82] La. Civ. Code art. 2047.
[83] La. Civ. Code art. 2046.
[84] La. Civ. Code art. 2050.
[85] *Curry v. Taylor*, 40,185 (La. App. 2 Cir. 9/21/05), 912 So. 2d 78, 81.

### 2. Relevant Policy Language[86]

Allied points to certain Policy provisions outlining Plaintiffs' duties to provide notice

of loss. The Policy requires "prompt notice" of the loss as follows:

> 3. Duties In The Event Of Loss
>     a. You must see that the following are done in the event
>     of loss:
>         . . .
>         (2) Give us prompt notice of the direct physical
>         loss or damage. Include a description of the
>         property involved.[87]

The Policy also provides the following regarding Allied's payment after proof of loss is

received:

> 4. Loss Payment
> We will pay for covered loss or damage within 30 days after
> we receive the sworn proof of loss, if you have complied with
> all of the terms of this Coverage Part, and:
>     a. We have reached agreement with you on the amount
>     of loss; or
>     b. An appraisal award has been made.[88]

With specific relation to catastrophic events, the Policy requires proof of loss within 180

days:

> D. … If the loss or damage arises due to a catastrophic event
> for which a state of disaster or emergency is declared
> pursuant to law by civil officials, and the covered property is
> located in an area within the declaration, you must submit the
> proof of loss to us within 180 days; but this 180-day period
> does not commence as long as the declaration of disaster or

---

[86] Allied attached excerpts of the Policy to its Motion. The Court will consider the excerpts because the Policy was referenced in the Amended Complaint and is central to Plaintiffs' claims. *See, e.g., In re Katrina Canal Breaches Litigation*, 495 F.3d at 205: "[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss." (citing *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004): "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")). *See also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[87] Rec. Doc. 23-3, p. 13.

[88] *Id.* at p. 14.

emergency is in existence and civil authorities are denying you access to your property.[89]

Finally, the Policy places a two-year prescriptive period on lawsuits against Allied running from the date of the loss and only allows legal action when the insured has complied with all pertinent provisions:

> D. LEGAL ACTION AGAINST US
> No one may bring legal action against us under this Coverage Part unless:
>> 1. There has been full compliance with all of the terms of this Coverage Part; and
>> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.[90]

### 3. Prescription[91]

Louisiana law allows the parties to an insurance contract to contractually shorten a prescriptive period. "In the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid."[92] Under Louisiana Revised Statute 22:868, no insurance contract may "contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim."[93] Thus, the two-year prescriptive period in the Allied Policy is permissible.

Allied asserts that, "by the time Plaintiffs filed their claim with Allied, their breach of contract and bad faith claims had prescribed under the Policy's provision requiring legal

---

[89] Rec. Doc. 23-10, p. 12.
[90] Rec. Doc. 23-5, p. 2.
[91] A Rule 12(b)(6) motion "encompasses dismissal on the basis of prescription." *Washington v. Allstate,* 901 F.2d 1281, 1283 (5th Cir. 1990).
[92] *Taranto v. La. Citizens Prop. Ins. Corp.*, 62 So. 3d 721, 728 (La. 2011).
[93] La. R.S. 22:868(B).

action to be brought within two years of the date of loss."[94] Conflating the issues of prescription and ripeness, Allied reasons as follows:

> Because Plaintiffs had not reported a claim by the time they filed suit on August 29, 2023, and because Plaintiffs' claims would have prescribed before any potential payment could have been due, their breach of contract and bad faith claims were unripe for judicial review and must be dismissed.[95]

Under Louisiana law,[96] prescription is interrupted by the commencement of an action "in a court of competent jurisdiction and venue."[97] The interruption resulting from filing suit in the proper court within the prescriptive period "continues as long as the suit is pending."[98] Further, the Louisiana Supreme Court has held that "[w]hether a petition sets forth a cause of action is irrelevant to the issue of interruption of prescription."[99]

According to Allied, "the two-year limitation on bringing suit necessarily means that Plaintiffs must present a ripe case or controversy within the two-year period."[100] Allied implicitly argues that the filing of an unripe lawsuit does not interrupt prescription; however, Allied fails to provide any legal support for this proposition, particularly where Plaintiffs filed an Amended Complaint prior to any ripeness or prescription arguments being raised. Neither party provides any analysis on interruption or other potential prescription issues. Accordingly, to the extent Allied seeks dismissal on prescription

---

[94] Rec. Doc. 23-1, p. 12.
[95] *Id.*
[96] "Federal courts apply Louisiana prescription law to diversity actions which Louisiana law governs, as 'state statutes of limitations are considered substantive for purposes of *Erie* analysis.'" *Franco v. Mabe Trucking Co.*, 3 F.4th 788, 791 n.3 (5th Cir. 2021) (quoting *Vincent v. A.C. & S., Inc.*, 833 F.2d 553, 555 (5th Cir. 1987)).
[97] La. Civ. Code art. 3462.
[98] La. Civ. Code art. 3463.
[99] *Batson v. Cherokee Beach & Campgrounds, Inc.*, 530 So. 2d 1128, 1130 (La. 1988).
[100] Rec. Doc. 28, p. 2.

grounds, the Motion is denied without prejudice. The parties are ordered to file briefs addressing prescription within 30 days of this Ruling.

### 4. Failure to State a Claim

Allied argues that Plaintiffs' claims for breach of contract and bad faith handling should be dismissed for failure to state a claim. First, Allied argues Plaintiffs failed to allege that Allied received proof of loss and failed to timely pay.[101] The Court rejects this argument; in the Amended Complaint, Plaintiffs allege that Allied received notice of the claim and conducted two inspections on specific dates.[102] Plaintiffs' claims are sufficiently plausible in light of these allegations.

Next, relying on the relevant Policy language, Allied argues that its coverage obligations were never triggered because of Plaintiffs' delay in providing notice of the claim. Allied contends that the notice provisions are "preconditions to Allied's coverage obligations."[103]

Again, Plaintiffs do not dispute that they did not provide notice of their claim until about two years after the alleged loss, with the filing of the Original Petition and submitting notice of loss the following day. This violates the Policy's requirement of proof of loss within 180 days. However, Plaintiffs argue that timely notice is not an "express condition precedent" to coverage under the terms of the Policy.[104]

"For a notice provision to act as a condition precedent to coverage, the language in the contract must be explicit and such a condition cannot be inferred."[105] Stated another

---

[101] Rec. Doc. 23-1, p. 13.
[102] Rec. Doc. 22, ¶¶ 9, 10.
[103] Rec. Doc. 23-1, p. 10.
[104] Rec. Doc. 26, pp. 4–5.
[105] *Pousson*, 2024 WL 251157, at *2 (citing *Transcon. Pipeline Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 378 F.Supp.2d 729, 738 (M.D. La. 2005) (citing, in turn, *Am. Safety Risk Servs., Inc. v. Legion Indem. Co.*, 153 F.Supp.2d 869, 876 (E.D. La. 2001)).

way, "the policy must expressly state that coverage is voided if prompt notice is not provided."[106] The Fifth Circuit has pronounced that "when prompt notice of a covered occurrence is a 'condition precedent' to recovery under an insurance policy, and the insured fails to give such notice, the claim is no longer covered by the policy, regardless of whether the insurer can demonstrate prejudice."[107] But "where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice."[108]

The Policy requires "prompt notice" as a duty of the insured in the event of loss or damage.[109] The Policy also provides that, in the event of a catastrophic event for which a state of disaster or emergency is declared,[110] the insured "must submit the proof of loss to [Allied] within 180 days."[111] The Policy also states: "We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part…"[112]

The Court finds that the Policy's notice provisions are not express preconditions to coverage. While the provisions present a close call, the Court is influenced by its obligation to construe any perceived ambiguities in favor of the insured.[113] Additionally, the Fifth Circuit has taken a relatively strict approach in analyzing whether notice provisions create conditions precedent to recovery. For example, in *Homestead Ins. Co.*

---

[106] *Id. See also Plain v. Safeco Ins. Co. of Oregon*, No. CV 23-00455-BAJ-EWD, 2024 WL 3641364, at *4 (M.D. La. Aug. 1, 2024) (the condition must "explicitly condition coverage on timely notice to the insurer") (internal alterations and citations omitted).
[107] *Gulf Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948, 955 (5th Cir. 1991).
[108] *Plain*, 2024 WL 3641364, at *4 (quoting *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1173 (5th Cir. 1992)).
[109] Rec. Doc. 23-3, p. 13.
[110] Allied attached the Hurricane Ida emergency declaration to its Motion (Rec. Doc. 23-14). This point is uncontested.
[111] Rec. Doc. 23-10, p. 12.
[112] Rec. Doc. 23-3, p. 14.
[113] *Curry*, 912 So. 2d at 81.

*v. Zar*, the Fifth Circuit considered whether the following provision created a condition precedent:

> In the event of loss or casualty resulting in a claim it is warranted that prompt notice of such an event shall be given to these underwriters.[114]

The court relied on its own jurisprudence and held that the language was not sufficiently explicit, explaining:

> In *Gulf Island,* 940 F.2d at 956, we emphasized the necessity of the "express condition precedent language" […], when we held that a notice provision without the words "condition precedent" did not allow the insurance company to avoid coverage without showing prejudice. In the instant case, the notice provision does not contain the express "condition precedent" words found in *MGIC,* 838 F.2d at 1385, and *Auster Oil,* 891 F.2d at 576 n. 7. Consequently, we hold that the district court erred in granting summary judgment to Homestead without a showing of prejudice[.][115]

The Court is further guided by the analysis found in a recent case from this district, *Plain v. Safeco Insurance Company of Oregon*.[116] There, the court explained that, "while giving 'immediate notice' is listed among Plaintiffs' general 'Duties After Loss,' [ ] nothing in the policy expressly bars coverage for noncompliance with the notice requirement."[117] The court also declined to infer a condition precedent to coverage from another policy provision which stated: "No action shall be brought unless there has been full compliance with all of the policy provisions[.]"[118] The court again reasoned that "this provision does

---

[114] *Homestead Ins. Co. v. Zar*, 18 F.3d 936, *2 (5th Cir. 1994).

[115] *Id.* at *2. *See also Peavey Co.*, 971 F.2d at 1173 (policy provisions stating that insured "must see to it that [insurer is] notified promptly" of loss and "[i]f a claim is made or 'suit' is brought against any insured, you must see to it that we receive prompt written notice of the claim or 'suit'" were not conditions precedent because "nowhere in the relevant section is there language of it being an express condition precedent to liability.").

[116] No. CV 23-00455-BAJ-EWD, 2024 WL 3641364 (M.D. La. Aug. 1, 2024).

[117] *Id.* at *4.

[118] *Id.* The court also cited other cases which reached similar conclusions (*see, e.g., Pousson,* 2024 WL 251157, at *2 ("[T]he policy contains 'prompt notice' among plaintiffs 'Duties After Loss,' but [the insurer]

not specifically bar coverage, or otherwise specify the consequence, for noncompliance with 'immediate notice.'"[119]

In reaching its conclusion, the *Plain* court provided helpful examples of policy language which Louisiana courts have found set forth necessary preconditions to coverage, including:

- "*[I]t is an express condition of this policy* that no claim shall be made ... twelve months after the expiration of this insurance, nor may any suit be filed if claim is not made ... within twelve months of the loss."[120]

- "*[W]e will not provide coverage ... unless* your notice of loss is received by us no later than 365 days after the date of the loss."[121]

- "[C]laim must be reported promptly *and is barred if* not reported within 365 days after the date of loss."[122]

The *Plain* court decided that, "without stronger language," the "immediate notice" provision at issue was not a condition precedent to coverage, and "Plaintiff[']s failure to provide immediate notice of the alleged loss does not automatically preclude coverage under the terms of the contract, or otherwise bar Plaintiff from filing suit."[123] Additionally, in another case from the Western District of Louisiana, the court reached the same conclusion even where, as here, the plaintiff filed suit against the insurer before notifying the insurer of the claim: "Here the policy contains 'prompt notice' among plaintiff's 'Duties

---

fails to point to any provision expressly stating the consequence for noncompliance); *Peavey*, 971 F.2d at 1173 ("While Section IV(2) of the policy does require that Degesch 'promptly' notify its insurer, nowhere in the relevant section is there language of it being an express condition precedent to liability.")).

[119] *Id.* at *5.

[120] *Gulf Coast Bank & Tr. Co. v. Agent All. Ins. Co.*, No. CV 22-44-JWD-RLB, 2023 WL 9059580, at *7 (M.D. La. Dec. 8, 2023) (emphasis added).

[121] *Est. of Munsterman v. Unitrin Auto & Home Ins. Co.*, 2020-209 (La. App. 3 Cir. 11/18/20), 307 So.3d 297, 300 (emphasis added).

[122] *Catalnotto v. GeoVera Specialty Ins. Co.*, No. CV 23-5396, 2024 WL 1533449, at *5 (E.D. La. Apr. 9, 2024) (emphasis added).

[123] *Plain*, 2024 WL 3641364, at *5.

After Loss,' but LIGA fails to point to any provision expressly stating the consequence for noncompliance."[124]

Because the notice provisions at issue here do not explicitly exclude coverage for noncompliance, the Court finds that Plaintiffs' right of action is not barred by those provisions.[125] However, even where compliance with the notice provisions is not an express condition precedent, coverage may still be denied if the insurer "demonstrate[s] that it was sufficiently prejudiced by the insured's late notice."[126] "The burden of proving actual prejudice falls on the insurer."[127] Plaintiffs argue that Allied has not suffered prejudice because "they have had the chance to conduct their own investigation of the Property, resulting in two inspections, once on September 20, 2023, and again on December 12, 2023."[128] Allied counters that "[t]he premature filing of an unripe claim is prejudicial to Allied because it is the only reason this suit was not time barred."[129]

Courts have observed that "the determination of whether a breach has been material and prejudicial is highly fact-specific[.]"[130] Further, an insurer does not show

---

[124] *Pousson*, 2024 WL 251157, at *2. Because the notice provision did not create a condition precedent to liability, the court also rejected the insurer's argument that the plaintiff's lawsuit was not ripe.

[125] Several Louisiana federal and state courts have recently analyzed the effect of La. R.S. 22:868(B) on notice provisions like the one in this case. *See Est. of Munsterman v. Unitrin Auto & Home Ins. Co.*, 2020-209 (La. App. 3 Cir. 11/18/20), 307 So. 3d 297; *Catalnotto v. GeoVera Specialty Ins. Co.*, No. CV 23-5396, 2024 WL 1533449 (E.D. La. Apr. 9, 2024); *Gulf Coast Bank & Tr. Co. v. Agent All. Ins. Co.*, No. CV 22-44-JWD-RLB, 2023 WL 9059580 (M.D. La. Dec. 8, 2023); *Mattress Direct, Inc. v. N. Ins. Co. of New York*, 530 F. Supp. 3d 633 (M.D. La. 2021). In some circumstances, policy provisions requiring notice within a time period of less than two years have been voided as contrary to La. R.S. 22:868(B) because they "impermissibly limited the insured's right of action against the insurer to a period of less than two years from inception of the loss." *Mattress Direct*, 530 F. Supp. 3d at 643. This issue was not briefed by either party; in fact, neither party even made a single mention of the statute. Moreover, in analyzing this issue, courts "consider whether the policy is a 'claims-made' or 'occurrence' policy" (*see, e.g., Treo Staffing, LLC v. Axis Surplus Ins. Co.*, No. CV 15-332-JJB-RLB, 2016 WL 923112, at *2 (M.D. La. Mar. 10, 2016)); another issue that neither party addressed.

[126] *Peavey Co.*, 971 F. 2d at 1173.

[127] *Kerr v. State Farm Fire & Cas. Co.*, 934 F. Supp. 2d 853, 858 (M.D. La. 2012) (internal quotations omitted).

[128] Rec. Doc. 26, p. 5.

[129] Rec. Doc. 28, p. 6.

[130] *Kovesdi v. Allstate Idem. Co.*, No. CIV.A. 10-697, 2010 WL 3835893, at *6 (E.D. La. Sept. 24, 2010).

sufficient prejudice "based upon only the naked delay in notifying the insurer."[131] At this stage, the Court lacks sufficient evidence to determine whether Allied suffered sufficient prejudice to warrant dismissal of Plaintiffs' claim. Such a fact-intensive inquiry is better suited for resolution at the summary judgment stage or at trial.

Because the notice provisions are not express conditions precedent to coverage and Allied has not made a sufficient showing of actual prejudice, the Motion to Dismiss on the basis of untimely notice is denied.

### III.    CONCLUSION

For the foregoing reasons, the *Motion to Dismiss*[132] filed by Defendants Allied World Insurance Company and Vantapro Specialty Insurance Company is DENIED.

The parties are hereby Ordered to brief the issue of Prescription within 30 days of the date of this Ruling.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 8th day of ___November___, 2024.

_Shelly D. Dick_
_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[131] *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 57 F. Supp. 3d 728, 762 (E.D. La. 2014).
[132] Rec. Doc. 23.